UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SUSAN PELLECHIO,

                Plaintiff,

        -against-

BLUETRITON BRANDS, INC.,
METROPOULOS & CO., and ONE ROCK
CAPITAL PARTNERS, LLC,

                Defendants.

**Civil Action No.**

**COMPLAINT**

**Jury Trial Demanded**

Date Filed: December 31, 2023

Susan Pellechio ("Plaintiff"), by and through her undersigned counsel, Dorf Nelson & Zauderer LLP, hereby alleges as follows:

## NATURE OF THE CASE

1.     This is a civil action based on Defendants' violations of Plaintiff's rights guaranteed to her by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-51 *et seq.* ("CFEPA"), to be free from sex/gender discrimination and retaliation.

## PARTIES

2.     Plaintiff, a former employee of Defendants, is female and a citizen of Worcester County, Massachusetts.

3.     At all relevant times, Plaintiff worked out of, and/or reported to, Defendant BlueTriton Brands, Inc.'s Connecticut office, which is located at 900 Long Ridge Road, Building 2, Stamford, CT 06902.

4.     Upon information and belief, Defendant BlueTriton Brands, Inc. ("BlueTriton") a water manufacturing and bottling company, is a for-profit foreign corporation incorporated in

Delaware.

5.      Upon information and belief, Defendant One Rock Capital Partners, LLC ("One Rock"), a private equity firm, is a for-profit foreign limited liability company incorporated in Delaware.

6.      Upon information and belief, Defendant Metropoulos & Co., an M&A firm, is not registered to do business in any state.  It is run by three principals – C. Dean Metropoulos and his sons, Evan Metropoulos and Daren Metropoulos (who owns the Playboy Mansion).  The Company has at least two employees.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims pursuant to Title VII.

8.      This Court also has supplemental jurisdiction over Plaintiff's CFEPA claims as they are so related to her Title VII claim that they form part of the same case or controversy.

9.      This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because this is a case between a citizen of Massachusetts (Plaintiff), citizens of Delaware (Defendants BlueTriton Brands, Inc. and One Rock Capital Partners, LLC), and an unregistered company (Defendant Metropoulos & Co.) with its principal offices located in California.  The amount in controversy exceeds $75,000.

10.      On or about January 25, 2023, Plaintiff filed a charge with the Connecticut Commission on Human Rights and Opportunities, which was cross-filed with the Equal Employment Opportunity Commission.

11.      The charges have been pending for 340 days and Plaintiff has requested a right to sue/administrative dismissal, which Plaintiff will file separately.

{DN/00285886;1 }                                        2

12.     Venue is proper in this District because Defendants conduct business in this District and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## FACTUAL BACKGROUND

13.     BlueTriton is a distributor of bottled water, which is owned and controlled by Metropoulos & Co., in partnership with One Rock.

14.     Before Plaintiff was hired by BlueTriton, she spent over 19 years in supply chain management with major companies such as Staples, Starbucks, and C&S Wholesale Grocers.

15.     Plaintiff was hired by BlueTriton on August 16, 2021, to manage transportation logistics.

16.     Plaintiff initially reported to Yannis Skoufalos, who was the Chief Supply Chain Officer.

17.     Then Plaintiff started to report to David Thorpe, the Executive Vice President and Chief Supply Chain Officer.

18.     In April of 2022, Plaintiff was promoted to the Executive Vice President level.

19.     When Plaintiff was promoted to this position, she was only the second woman on a 12-member executive team.

20.     After Plaintiff's promotion, One Rock's operating partner, Frank Orfanello, who had no experience with delivery or logistics, became more intrusive by directing Plaintiff's work, questioning her decision-making, and even redirecting her to accomplish work outside of her direct accountabilities.

21.     Orfanello did not treat Plaintiff's male counterparts in this manner, revealing his bias against women.

22.     For example, Orfanello directed Plaintiff to take the lead to modify Nestlé Waters

North America's customer operating terms and conditions, which had never been successfully implemented, despite the fact that Niagra Waters (a competitor) has successfully done so.

23. Orfanello addressed the lack of customer adoption to these terms and conditions directly with Plaintiff, but did not address or hold her male peer, Chris Link, former Head of Sales, accountable despite it being his <u>direct</u> responsibility to accomplish.

24. Orfanello would act in a condescending manner towards Plaintiff, by "mansplaining" (e.g., Susan, what I think you are trying to say is x, not y), and engaging in gaslighting and microaggressions (e.g., Susan, I am just trying to help you).

25. During the later spring/summer of 2022, Orfanello became more emboldened.

26. With insufficient lead time before the May 2022 Board Meeting, he instructed Plaintiff to put together comparative trend graphs for the freight and fuel markets (with assistance from Finance).

27. Orfanello claimed he did so because Plaintiff needed to "learn and understand" how the Board thinks and what she might be asked.

28. Orfanello also forced Plaintiff to stay up for 24 hours to complete critical support schedules in advance of the Board meeting because Finance did not have the data to complete his directive.

29. Meanwhile, per the Board's request, Plaintiff successfully presented a high-level depiction of the current state of Transportation, her team, and her plans to execute against multiple opportunities.

30. At the end of the meeting Plaintiff was given a high five by a consultant of One Rock.

31. Despite Orfanello's interference, Plaintiff was successful all on her own as others

also complimented her after the meeting on how well she presented to the Board and on her preparedness.

32.     The lead-up to the next Board meeting was even more intense.

33.     Plaintiff had a trip to Scotland scheduled for July 23 through July 29, 2022.

34.     As was customary, Plaintiff updated her Outlook calendar and provided her vacation schedule to the executive administrative assistants well in advance.

35.     Upon leaving work late evening on July 22, Plaintiff called Orfanello to update him on a different work matter, but he did not answer.  When Plaintiff left him the update on voicemail, in closing she reminded him of her return date from Scotland.

36.     The following morning, Saturday, July 23, Orfanello called Plaintiff and spent 90 minutes berating and grilling her on her preparation required for the upcoming Board meeting on August 11, 2022.

37.     For the first time, Orfanello told Plaintiff that she should prepare 20-30 slides for this meeting.

38.     In response, Plaintiff confirmed with her direct boss, Paul Norman, former CEO, along with Javier Idrovo, CFO, that they did not intend to have her make a presentation at the Board meeting.

39.     Thus, Orfanello persisted and forced Plaintiff to work throughout her planned vacation to put together the framework that he requested, but was not required for the meeting.

40.     On August 4, 2022, and during what was one of many check-ins to see her progress with completing the Board slides, Orfanello forced Plaintiff to talk through each of the slides as if she were speaking to the Board – but without any notice or preparation.

41.     During a break, Plaintiff called Orfanello and told him she understood that Norman

did not intend to have her present at the Board meeting, and questioned why she had to work on the slide deck further.

42.    Orfanello condescendingly responded to Plaintiff that he just "wanted to help" *but apparently*, "she didn't need any of his help" (i.e., with gaslighting per usual).

43.    While crying, Plaintiff responded that she had never been so disrespected in her entire career and explained that she needed to regroup first before returning to her team.

44.    Later that day, after their call, Orfanello sent a text to Plaintiff calling her "unprofessional."

45.    After work, and due entirely to Orfanello's actions, Plaintiff went to the emergency room with dangerously high blood pressure (190/105).

46.    Due to her blood pressure, Plaintiff's doctors held her overnight.

47.    On August 8, 2022, Plaintiff met with her primary care doctor to discuss her toxic work situation and Orfanello's treatment of her at length.

48.    By the end of the appointment, Plaintiff was diagnosed with hypertension and anxiety.

49.    Plaintiff's doctor prescribed her Amlodipine Besylate for blood pressure, 200 mg Zoloft (the maximum daily dose, for anxiety), and Lorazepam (as needed, also for anxiety).

50.    On August 17, Plaintiff met with Norman and discussed the discriminatory manner in which Orfanello had been treating her.

51.    In that meeting, Plaintiff complained that Orfanello's condescending and disrespectful treatment of her was unlike anything she had ever encountered as a woman professional and different from the way he treated men.

52.    As a result, Norman offered to speak with Orfanello about his mistreatment toward

Plaintiff.

53.     Then, on August 23, nearly a week later, Plaintiff asked Norman if he had spoken with Orfanello.

54.     Norman said he did not speak with Orfanello, but that he advised Chris Buhl, former Chief Human Resource Officer, of Plaintiff's complaint.

55.     By August 25, Plaintiff had not heard from Buhl, so she reached out to him and they met later that day.

56.     During the meeting, Plaintiff reiterated to Buhl that she had never been treated with such condescension and intimidation as a female in her entire professional career.

57.     Plaintiff pointed out how often Orfanello rephrased her wording (i.e., mansplaining), micromanaged and second-guessed her professional judgment, and told her condescendingly and passive-aggressively that he was "only trying to help."

58.     In response, Buhl asked Plaintiff if Orfanello acted inappropriately toward her in any other way (i.e., sexually), to which Plaintiff said no.  Apparently, only sexual interest was a concern to Buhl – not other types of gender discrimination.

59.     On Friday, September 2, Plaintiff met with Dean Metropoulos and Nan Sotomayor, Vice President of Human Resources (who reports to Buhl).

60.     During that meeting, neither Metropoulos nor Sotomayor addressed the sex/gender-based differential treatment Plaintiff received from Orfanello.

61.     Instead, they questioned whether Plaintiff was a correct "cultural fit" for the Company and asked what it would take to "make this right financially."

62.     On September 6, after the Labor Day weekend, and in retaliation for her complaints, Defendants presented Plaintiff with a notice of termination, effective September 16, 2022, along

with a separation agreement.

63.     And, on September 13, in further retaliation for her complaints, Defendants terminated Plaintiff's employment, effective immediately, just four hours after telling them that she had retained an attorney.

64.     Defendants fired Plaintiff just six business days after she complained of gender discrimination and after she was told that she was not a "cultural fit," which proves that her termination – in the face of her excellent job performance – was, in fact, a result of unlawful retaliation.

65.     Plaintiff's mental and physical health has continued to suffer.  She has experienced significant and unhealthy weight loss, still has to take high blood pressure and anxiety medications, and has also developed coronary artery disease (for which she also takes medication as well), all as a result of Defendants' egregious actions.

66.     Moreover, Defendants have a sordid discriminatory and retaliatory history.

67.     Before Plaintiff's termination, a female executive at Blue Triton resigned in July of 2021, due to the:

> most hostile and adversarial work environment I have experienced in my career … directed primarily at women in the workplace and [] perpetuated primarily by men. You have tolerated a work culture that is quick to intimidate, silence, and bully. You have an environment that is not inclusive, does not value diversity of thought, and consciously and unconsciously has a bias against women.

68.     This executive has also informed Plaintiff of a female Human Resources executive who resigned just before her for similar reasons.

69.     In March 2022, the company terminated another high-ranking executive in retaliation for his complaint of gender harassment and discrimination on behalf of female members

of the marketing department, including, in particular, another female executive (who replaced the former executive referenced in Paragraph 68) and who was terminated as well.

## FIRST CAUSE OF ACTION
### (Discrimination Based on Sex/Gender in Violation of Title VII)

70.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

71.    By the acts and practices described herein, Defendants intentionally and willfully violated Title VII by discriminating against Plaintiff, subjecting her to adverse actions and a hostile environment, and ultimately terminating Plaintiff's employment because of her sex/gender.

72.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

73.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

74.    Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Discrimination Based on CFEPA)

75.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

76.    By the acts and practices described herein, Defendants intentionally and willfully violated Title VII by discriminating against Plaintiff, subjecting her to adverse actions and a hostile environment, and ultimately terminating Plaintiff's employment because of her sex/gender.

77.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has

endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

78.     As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

79.     Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

80.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

81.     Defendants engaged in an unlawful practice under Title VII by retaliating against Plaintiff in terminating her as a result of her complaints of gender discrimination.

82.     As a proximate result of Defendants' unlawful acts of retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

83.     As a proximate result of Defendants' unlawful acts of retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

84.     Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of CFEPA)

{DN/00285886;1 }                                10

85.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

86.    Defendants engaged in an unlawful practice under CFEPA by retaliating against Plaintiff in terminating her as a result of her complaints of gender discrimination.

87.    As a proximate result of Defendants' unlawful acts of retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

88.    As a proximate result of Defendants' unlawful acts of retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

89.    Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## JURY DEMAND

90.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment awarding:

A.  Injunctive relief;

B.  back pay, front pay, and damages for all employment benefits Plaintiff would have received but for the unlawful acts and practices of Defendants;

C.  compensatory damages;

D.  punitive damages;

E.  liquidated damages;

F.  statutory interest;

G.  reasonable attorneys' fees and costs incurred in this action;

H.  and any other relief that the Court deems just and proper.


Dated: December 31, 2023            **DORF NELSON & ZAUDERER LLP**
       Rye, New York


By: s/Andrew Marks_____
       Andrew Marks
       Bar # CT10480

555 Theodore Fremd Avenue
Rye, New York 10580
Tel: 914.381.7600
Fax: 914.381.7608
amark@dorflaw.com

*Attorneys for Plaintiff*